IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELISHA L. GRESHAM,                )
                                  )
            Plaintiff,            )
                                  )
       v.                         )   C.A. No. 16-1315 (MN)
                                  )
STATE OF DELAWARE DEPARTMENT      )
OF HEALTH AND SOCIAL SERVICES,    )
                                  )
            Defendant.            )

## MEMORANDUM OPINION

Elisha L. Gresham – Pro Se Plaintiff

Wilson B. Davis, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, DE – attorneys for Defendant

December 18, 2018
Wilmington, Delaware


NOREIKA, U.S. DISTRICT JUDGE:

Plaintiff Elisha L. Gresham ("Plaintiff" or "Ms. Gresham"), who proceeds *pro se* and has been granted leave to proceed *in forma pauperis,* filed this action on December 27, 2016 alleging employment discrimination against the Delaware Department of Health and Human Social Services ("DHSS"). (D.I. 2). The Court previously dismissed Plaintiff's ADA claims with prejudice but granted her leave to amend with respect to potential Title VII claims. (D.I. 15). Plaintiff filed an amended complaint on July 23, 2018 ("Amended Complaint"). (D.I. 23). In the Amended Complaint, Plaintiff asserted causes of action for: (1) disability discrimination in violation of the ADA under Title I; (2) retaliation relating to her disability discrimination complaint under Title V; and (3) race or gender discrimination under Title VII. Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (D.I. 25). Ms. Gresham opposes the motion. (D.I. 27).[1] For the reasons discussed below, the Court will grant the motion-in-part and deny the motion-in-part.

I.  **BACKGROUND**

On March 1, 2010, Ms. Gresham was hired by DHSS as an "Administrative II." (D.I. 23 at ¶ 9). In November of 2013, she interviewed for the position of "Purchasing Services Coordinator II." (D.I. 23 at ¶ 10). She alleges that unnamed "[i]mmediate management did not want plaintiff to have [the new] position" and "began to retaliate against [her] by "**directly stating**

---

[1] Plaintiff did not respond to Defendant's motion in the time prescribed by the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware. *See* D. Del. LR 7.1.2(b). She, however, responded promptly after the Court's Order to Show Cause (D.I. 26) and cited illness and several other issues that prevented her from responding in a timely manner. Given Ms. Gresham's *pro se* status, the Court has accepted and considered the late response. Ms. Gresham later filed a proposed surreply without seeking leave of the Court. The surreply is improper, but even if the Court were to consider it, the Court's decision would not change.

1

to the plaintiff, they . . . preferred a White woman, a White man or a Middle Eastern Woman in the position" and "didn't want to be around when the 'shit hits the fan' **for having too many Black people**" in the unit. (*Id.*). In December of 2013, Ms. Gresham was "hired into the new position of a Purchasing Services Coordinator II and immediate management began aggressively attacking the plaintiff via racial taunts, insults with the use of profanity" and "refused any procedural training" that was required. (D.I. 23 at ¶ 11).

She alleges that "immediate management" forced her to do her previous job as well as the new one "in an attempt to overwork and create exhaustion, frustration, high pressure, stress and very hostile work environment" and force her to quit. (D.I. 23 at ¶ 11). She alleges that in January 2014, she suffered a stroke at her desk "and as a result, developed new disabilities such as, panic and anxiety attacks and the probability of now suffering another stroke." (D.I. 23 at ¶ 13). She returned to work that month with "restrictions from her doctors and special accommodations" but alleges that management confined her to her office and that she was mistreated because of her disabilities. (*Id.* at ¶¶ 14-16).

In February of 2015, Plaintiff lodged "a formal written complaint against her management with the department's Division of Labor Relations Unit (LRU)." (D.I. 23 at ¶ 16). The complaint included a detailed summary of her allegations. (D.I. 23-4 at 3-9). In it she denied that her purported stroke was work-related and made no mention of race or gender discrimination. (*Id.*). The State LRU investigator concluded that one of Plaintiff's supervisors had inappropriately called Plaintiff a "dumb ass." (D.I. 23-4 at 10). The investigator recommended that the supervisor be given a verbal reprimand and be required to attend additional training classes. (*Id.* at 10-11).

In May 2015, Plaintiff took a medical leave. (D.I. 23 at ¶ 19). She did not return to work. On February 9, 2016, DHSS terminated her employment "effective November 18, 2015" (D.I. 23-

2

5) and sought to collect on the overpayment of wages between November of 2015 and February of 2016. (D.I. 23-5, 23-7). Plaintiff applied for unemployment benefits with the Delaware Department of Labor. (D.I. 23-6).

In January 2016, Plaintiff filed a EEOC complaint asserting for race, gender, and disability discrimination, as well as retaliation. (D.I. 23-3). The United States Department of Justice ("DOJ") did not file suit based on Plaintiff's EEOC complaint within 180 days of its filing with the EEOC, and, at Plaintiff's request, the DOJ issued a "right to sue" letter on November 1, 2016. Plaintiff then filed her initial complaint in this matter on December 27, 2016, and her Amended Complaint on July 25, 2018.

## II. LEGAL STANDARDS

In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Because Ms. Gresham proceeds *pro se,* her pleading is liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

3

action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props. Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, _U.S._, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

III. **DISCUSSION**

A. **Plaintiff's ADA (Title I) and Retaliation (Title V) Claims**

In its prior opinion, the Court held that the "law is settled that Gresham may not recover in federal court under Title I of the ADA" because "under the Eleventh Amendment, the State is immune from suit for damages brought pursuant to Title 1 of the ADA." (D.I. 14 at 4-5 (citing *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) and *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005)). The Court, thus, dismissed the ADA claims with prejudice, barring Plaintiff from bringing the same claim again. Nevertheless, in her Amended Complaint, Plaintiff again asserted her ADA claims.

4

Defendant again moved to dismiss. In her response, Plaintiff argues that by its text the Eleventh Amendment does not apply to suits filed by plaintiffs against the state in which they reside. (D.I. 27 at 18-19). As the Supreme Court observed in *Garrett*, however, previous holdings had "extended the Amendment's applicability to suits by citizens against their own States."[2] 531 U.S. at 363. Thus, the Eleventh Amendment applies and DHSS (as a division of the State of Delaware) remains immune from Plaintiff's ADA claim.

To the extent that the Amended Complaint asserts a retaliation claim pursuant to Title V of the ADA, that claim must also be dismissed. As courts in this district have found, there is a "'general principle that a Title V claim is barred if the underlying claim is barred by sovereign immunity.' Thus, a defendant is immune from suit in connection with a Title V claim if it is premised on the defendant's alleged violation of Title I." *Brooks v. Delaware, Dep't of Health & Soc. Servs.*, C.A. No. 10-569 (GMS), 2012 WL 1134481, at *4 (D. Del. Mar. 30, 2012) (quoting and citing *Karam v. Del. Div. of Servs. for Children, Youth and Their Families*, C.A. No. 09-904 (RBK/JS), 2010 WL 5343182, at *3-4 (D. Del. Dec. 15, 2010)). Here, as in *Brooks*, Plaintiff's Title V claim is premised on DHSS' alleged discrimination under Title I, and thus DHSS is also immune from her Title V claim. Therefore, the Court once again dismisses Plaintiff's Title I and V claims with prejudice.

### B. Plaintiff's Title VII Claims

"A claimant bringing a charge of discrimination under Title VII in Delaware has 300 days from the time of the alleged discriminatory act to file a complaint with the EEOC." *Riley v.*

---

[2] *E.g.*, the Supreme Court has held that while the Eleventh Amendment does not by its terms bar suits against a state by its own citizens, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

*Delaware River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006) (citing *Arasteh v. MBNA Am. Bank, N.A.*, 146 F. Supp. 2d 476, 490 (D. Del. 2001)). "Dismissal of a Title VII complaint is warranted when the claimant fails to file the charge within this 300–day statute of limitations period." *Id.* (citing *Andrews v. Abbott Lab.*, C.A. No. 00-901 (GMS), 2002 WL 598458, at *6 (D. Del. April 12, 2002). Here, Plaintiff filed her charge with the EEOC on or about January 11, 2016.[3] (D.I. 23-3 at 13-14). Thus, incidents that occurred before March 17, 2015 may be barred by the 300-day statute of limitations.[4]

In *National R.R. Passenger Corp. v. Morgan*, however, the United States Supreme Court addressed the statute of limitations under Title VII regarding both allegations of discrete acts of discrimination and allegations of a hostile work environment. *Riley v. Delaware River & Bay Auth.*, 457 F. Supp. 2d 505, 510 (D. Del. 2006) (citing *Morgan*, 536 U.S. 101, 110-22 (2002)). Although the Supreme Court held that "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period, it also held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* (citing *Morgan*, 536 U.S. at 105). "Therefore, an alleged discrete act of discrimination must have

---

[3] Defendant asserts that Plaintiff filed her charge with the EEOC on February 16, 2016. Plaintiff does not provide the date when she filed a charge with the EEOC other than "January, 2016) (D.I. 23 at ¶ 21). In the EEOC documents attached to her Amended Complaint, the earliest communication appears to be on January 11, 2016.

[4] If the Court were to use the earliest date supported by the "January, 2016" allegation in Plaintiff's Amended Complaint (January 1, 2016), the 300-day limitations period would begin on March 7, 2015. There are no allegations in the Amended Complaint that suggest the analysis would be any different if the Court were to use March 7, 2015 as the earliest date rather than March 17, 2015.

occurred within the 300-day statute of limitations period to be considered, while the actions that comprise a hostile environment claim do not have to fall entirely within the 300 days." *Id.*

A discrete act is exactly what the word "discrete" connotes: a single act or occurrence. *Id.* at 511 (citing *Morgan*, 536 U.S. at 111-15). Here, the discrete acts alleged by Plaintiff to support her claims of racial and gender discrimination are statements "to the plaintiff, they . . . preferred a White woman, a White man or a Middle Eastern Woman in the position" and "didn't want to be around when the 'shit hits the fan' **for having too many Black people**" in the unit and "racial taunts, insults with the use of profanity," all of which occurred no later than December of 2013. (D.I. 23 at ¶¶ 10-12). The Court agrees with Defendant that these discrete statements are time-barred.[5]

Defendant fails to address, however, Plaintiff's allegations that a hostile work environment and retaliation continued until the end of her employment in February of 2016. (D.I. 23 at ¶¶ 14-22). The Supreme Court in *Morgan* determined that hostile environment claims "are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. If one of the acts contributing to the hostile environment claim occurred within the statute of limitations period, all the acts comprising the claim may be considered. *Id.* at 117.[6] Here, in Plaintiff's Amended Complaint she

---

[5] Title VII does not address an internal investigation by a complainant's employer. Even if DHSS could be construed as the "State or local agency" under this provision and even if the February 8, 2016 termination letter legally signified completion of DHSS's investigation, the 300-day period already passed. The United States Supreme Court explained in *Mohasco Corp. v. Silver* that where "the State proceedings [do] not terminate until well after the expiration of the 300-day period . . . the 300-day limitations period is the one applicable to [the complainant's] charge." 447 U.S. 807, 817 (1980).

[6] The continuing violation doctrine, which is generally recognized under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, provides that discriminatory acts that are not individually actionable may be aggregated to make out a hostile environment claim. *Doe v. Mercy Catholic Med Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013)). These acts can occur at any time if they are linked in a pattern of actions continuing into the limitations period. *Id.* All the

states that she was threatened with reprisals ("barred from ever getting another state job") for attempting to rebut assertions made in a performance review (D.I. 23 at ¶ 18) and harassed with phone calls regarding her return to work. (*Id.* at ¶ 19).

In considering a motion to dismiss, the Court must accept the facts in the Amended Complaint as true and take them in the light most favorable to Plaintiff. Here, Plaintiff has pleaded sufficient facts to state a plausible claim for relief under Title VII. Specifically, nothing in the Amended Complaint indicates that Plaintiff is complaining only of a discrete act from before April 2015. Thus, under *Morgan,* Plaintiff's allegations of a hostile work environment and retaliation in violation of Title VII cannot be dismissed based on the current record.

### C. Plaintiff's Claims Under § 504 of the Rehabilitation Act

In her response to DHSS's motion, Plaintiff alleges a violation § 504 of the Rehabilitation Act. There is, however, no claim for relief under § 504 included in Plaintiff's Amended Complaint.[7] Moreover, aside from the lack of a specific reference to the statute, Plaintiff has not alleged a *prima facie* case of discrimination under § 504.

The Rehabilitation Act is a precursor to the ADA, and "the elements of a claim under §504(a) of the Rehabilitation Act are very similar to the elements of a claim under Title I of the Americans with Disabilities Act." *Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 229 (3d Cir. 2000). The Third Circuit has laid out the § 504 elements as follows:

---

alleged acts, however, must be part of the same unlawful practice, meaning they involved "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Id.*

[7] The only reference to the Rehabilitation Act in the Amended Complaint is in Plaintiff's Count 3 asserting a Title V violation and noting that "[S]ection 102 of the CRA amended the statutes by adding a new section following section 1977 ( 42 U.S. C. 1981) to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the ADA, and section 501 of the Rehabilitation Act of 1973 (Rehab Act)." (D.I. 23 at 17).

> In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. The plaintiff must make a prima facie showing that reasonable accommodation is possible. If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer.

*Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996).

Here, Plaintiff has failed to allege that she was qualified to perform the essential functions of her job at the time of her termination. In the Amended Complaint, Plaintiff alleges that she was medically disabled from working at the time of her termination. She took a medical leave of absence in May 2015. (D.I. 23 at ¶ 19). In June and July 2015, Plaintiff's physician continued to place her out of work. (*Id.* at ¶ 20). On September 15, 2015, Plaintiff's physician stated that Plaintiff's condition was "permanent." (D.I. 23-8 at 5 and D.I. 23-3 at 7 (EEOC investigator's case notes indicating Plaintiff stated her condition was "permanent" as of September 18, 2015 and could not return to work until further notice)). On November 3, 2015, Plaintiff's physician provided a note stating that Plaintiff's "serious medical issues" made it "advisable that she not return to work." (D.I. 23-8 at 6).

Thereafter, on January 17, 2016, Plaintiff filed for unemployment benefits with the Delaware Department of Labor ("DOL") providing medical documentation stating that she was "totally disabled from performing the duties required" in her DHSS position. (D.I. 23-6 at 3). Plaintiff further alleges that she was still attempting to gain long term disability benefits from DHSS's insurer, The Hartford, as of February 5, 2016. (D.I. 23 at ¶ 24). The DOL decision dated February 12, 2016 states that DHSS discharged Plaintiff because she was not "medically cleared to return to work." *Id.*

Plaintiff suggests that DHSS should have accommodated her with an open-ended leave based on her disability. The Third Circuit, however, has held that "an indefinite leave of absence is not" a reasonable accommodation. *Tolliver v. Trinity Par. Found.*, 723 F. App'x 166, 171 (3d Cir. 2018) (citing *Hwang v. Kansas State University*, 753 F.3d 1159, 1161-62 (10th Cir. 2014) ("[A]n employee who isn't capable of working for [six months] isn't an employee capable of performing a job's essential functions-and . . . requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation."); *see also Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 586 (3d Cir. 2004) (holding that request for leave for indefinite leave "does not constitute a reasonable accommodation"). Having failed to allege that she was qualified to perform the essential functions of her job at the time of her termination, Plaintiff has not alleged a plausible claim for relief under § 504. Any claim under § 504 is dismissed without prejudice.

## IV. CONCLUSION

For the forgoing reasons, the Court will: (1) grant Defendant's motion to dismiss Plaintiff's Title I and Title V claims with prejudice; (2) deny the Defendant's motion to dismiss Plaintiff's Title VII claims regarding a hostile work environment and retaliation; and (3) grant Defendant's motion to dismiss any purported claims under § 504 of the Rehabilitation Act without prejudice. An appropriate order will follow.